IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D

FEB 2 8 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

PRO-TELLIGENT, LLC,                    )
                                       )
              Plaintiff,               )
                                       )
       v.                              )    Civil Action No. 1:19cv1640 (RDA/JFA)
                                       )
AMEX INTERNATIONAL, INC.,              )
                                       )
              Defendant.               )
_____)

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiff Pro-Telligent's ("Pro-Telligent" or "plaintiff")

motion for default judgment against defendant Amex International, Inc. ("Amex International"

or "defendant"). (Docket no. 15). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned

magistrate judge is filing with the court his proposed findings of fact and recommendations, a

copy of which will be provided to all interested parties.

**Procedural Background**

On December 30, 2019, plaintiff filed a complaint against defendant alleging breach of

contract, unjust enrichment, constructive trust, and conversion. (Docket no. 1) ("Compl."). A

summons was issued for service on defendant on the same day. (Docket no. 4). On January 10,

2020, plaintiff filed a return of service confirming that the summons and complaint were served

on defendant's registered agent on January 7, 2020. (Docket no. 6). In accordance with Federal

Rule of Civil Procedure 12(a), defendant's responsive pleading was due on January 28, 2020,

twenty-one (21) days after defendant was served with a copy of the summons and complaint.

Defendant has not filed a responsive pleading and the time for doing so has expired.

Plaintiff requested an entry of default as to defendant on January 30, 2020. (Docket no. 9). The Clerk of Court entered default as to Amex International later that day. (Docket no. 11). On February 7, 2020, the District Judge ordered plaintiff to file a motion for default judgment, an accompanying memorandum in support, and a notice of hearing for February 28, 2020. (Docket no. 13). On February 17, 2020, plaintiff filed a motion for default judgment (Docket no. 15), a memorandum in support (Docket no. 16), an affidavit of Dustin Paul (Docket no. 16-1), and a notice setting the motion for a hearing on February 28, 2020 (Docket no. 17). On February 28, 2020, plaintiff's counsel appeared before the undersigned, but no one appeared on behalf of the defendant.

### Factual Background

The following facts are established by the complaint and plaintiff's memorandum in support of its motion for default judgment. (Docket no. 16). Defendant is a federal contractor. (Compl. ¶ 6). The United States Agency for International Development ("USAID") awarded defendant a contract, portions of which defendant subcontracted to plaintiff. (Compl. ¶¶ 6–7). Plaintiff completed all of its obligations under the subcontract and invoiced defendant for the work on a progress basis. (Compl. ¶¶ 8–9). In turn, defendant invoiced USAID for plaintiff's subcontract work. (Compl. ¶ 10). By invoicing USAID, defendant certified that prior payments had been made to plaintiff from previous payments received by defendant from USAID pursuant to the contract and that timely payments would be made from the proceeds covered by defendant's then-current payment applications. (Compl. ¶ 11). Defendant subsequently received progress payments from USAID based on its invoices. (Compl. ¶ 13). Despite plaintiff's multiple demands for payment, defendant did not and has not fully or timely paid plaintiff. (Compl. ¶ 15). Defendant made repeated assurances—both written and verbal—to plaintiff and

2

USAID as inducements to ensure neither the contract or subcontract was terminated.  (Compl. ¶¶ 16–18).  Currently, defendant owes plaintiff a principal amount of $279,660.27.  (Docket no. 16 at 2).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Based on the defendant's failure to file a responsive pleading in a timely manner, the Clerk of Court has entered a default against defendant.  (Docket no. 11).

A defendant in default admits the factual allegations in the complaint.  *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim.").  Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.  Plaintiff alleges that this matter is properly before this court pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship and an appropriate amount in controversy.  (Compl. ¶ 3).

3

Plaintiff Pro-Telligent, LLC is a wholly owned subsidiary of Tetra Tech, Inc., a Delaware corporation with its principal place of business in California. (Docket no. 16 at 1). Defendant Amex International, Inc. is a District of Columbia corporation with its principal place of business in the District of Columbia. (Compl. ¶ 2). Plaintiff's complaint seeks judgment in excess of $75,000.00. (Compl. ¶ 3). Given that these allegations are uncontested, this court has jurisdiction pursuant to 28 U.S.C. § 1332.

The court also has personal jurisdiction over the defendant. Under the subcontract between the parties, Amex International was to perform in Virginia. (Docket no. 16 at 3). Amex International also frequently communicated with plaintiff within Virginia regarding the subcontract. (*Id.*). Additionally, past payments between the parties were made in Virginia and those payments due should also have been made in Virginia. (*Id.*). Venue is proper in this court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to plaintiff's claims against defendant occurred in the Eastern District of Virginia. (Compl. ¶ 4).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendant, and that venue is proper in this court.

## Service

Pursuant to Federal Rule of Civil Procedure 4(h), a corporation, partnership, or other unincorporated association may be served in a judicial district of the United States (1) in the manner prescribed in Rule 4(e)(1) for serving an individual, or (2) by delivering a copy of the summons and complaint to an officer, manager, or general agent, or any other agent authorized by law to receive service of process.

On December 30, 2019, a summons was issued as to defendant Amex International. (Docket no. 4). On January 7, 2020, Nina Lew, a private process server, delivered the summons and complaint to Brendan Chau, an Intake Specialist authorized to accept service on behalf of CT Corporation System, the registered agent for defendant. (Docket no. 6 at 2, 3). Based on the foregoing, the undersigned magistrate judge recommends a finding that service of process has been accomplished in this action.

## Grounds for Default Judgment

In accordance with Federal Rule of Civil Procedure 12(a), defendant was required to file a responsive pleading by January 28, 2020, twenty-one (21) days after defendant was served with a copy of the summons and complaint. No responsive pleading has been filed by the defendant and the time for doing so has expired. On January 30, 2020, plaintiff filed a request for entry of default against defendant pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 9). The certificate of service accompanying the filing indicates that plaintiff's counsel sent a copy to defendant's registered agent. (*Id.* at 2). The Clerk of Court entered a default against defendant on January 30, 2020. (Docket no. 11).

On February 17, 2020, plaintiff filed a motion for default judgment (Docket no. 15), a memorandum in support (Docket no. 16), a declaration of Dustin Paul (Docket no. 16-1), and a notice setting the motion for a hearing on February 28, 2020 (Docket no. 17). The certificates of service accompanying the motion, memorandum in support, and notice indicate that plaintiff's counsel sent a copy of the motion, memorandum, declaration, and notice to defendant and defendant's registered agent. (Docket nos. 15–17). For the reasons stated above, the undersigned magistrate judge recommends a finding that the Clerk of Court properly entered a default as to defendant and that defendant has notice of these proceedings.

<u>Liability</u>

According to Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. (8)(b)(6).

**Breach of Contract (Count I)**

Count I of plaintiff's complaint states a breach of contract claim as to defendant's failure to perform its obligations under the subcontract by wrongfully refusing and failing to pay plaintiff. (Compl. ¶¶ 21–22). Pursuant to the subcontract, the agreement is governed by District of Columbia law. (Docket no. 8-1 at 20). Under D.C. law, the required elements for proving breach of contract are: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)).

In February 2015, the parties agreed to and signed a subcontract agreement. (Docket no. 8-1 at 18). Under Section 15 of the subcontract, plaintiff was directed to submit an invoice no later than the seventh day of each month for services and costs covering the previous month or earlier periods where reimbursement had not yet been claimed. (*Id.* at 10, ¶ 15.1). Under the same provision, defendant contracted to make a "good faith effort" to submit its monthly bills to USAID by the fifteenth of the following month. (*Id.*). Defendant was then required to timely and fully "flow down and pay" plaintiff all payment monies received from USAID for plaintiff's work. (Compl. ¶ 14). Plaintiff invoiced defendant for its subcontract work on a progress basis. (Compl. ¶ 9). In turn, defendant invoiced USAID for plaintiff's subcontract work. (Compl. ¶

6

10).  However, defendant has failed to pay plaintiff the monies it received from USAID for

plaintiff's work, and despite demands from plaintiff, defendant has not yet cured this default.

(Compl. ¶¶ 12–15).  Further, although defendant has acknowledged to both plaintiff and USAID

that it has not paid plaintiff and has made repeated assurances that the delayed non-payments

will be rectified and paid, defendant has not yet fulfilled its obligation.  (Compl. ¶¶ 16, 19).  As a

result of defendant's breach, plaintiff has sustained monetary damages in the amount equal to the

payments owed by defendant, currently totaling $279,660.27.  (Docket no. 16 at 4, 5).

Accordingly, defendant violated its legal obligation to plaintiff and plaintiff has been injured by

defendant's breach of that obligation.  Therefore, the undersigned recommends a finding that

plaintiff has established that defendant breached the terms of the subcontract between the parties.

**Unjust Enrichment/Quantum Meruit (Count II)**

Count II of plaintiff's complaint states an unjust enrichment claim as to defendant's

failure to pay plaintiff for its work which defendant has received and continues to take advantage

of.  (Compl. ¶¶ 24–26).  Under D.C. law, the elements of an unjust enrichment claim are "(1) the

plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under

the circumstances, the defendant's retention of the benefit is unjust." *Falconi-Sachs v. LPF*

*Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (quoting *News World Communications, Inc.*

*v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)).

Plaintiff completed all its obligations under the subcontract agreement between the

parties.  (Compl. ¶ 8).  Defendant retained the benefit of plaintiff's work as part of its prime

contract with USAID but unjustly failed to compensate plaintiff as per the terms of the

subcontract.  (Compl. ¶¶ 24–25).  Accordingly, the undersigned recommends a finding that

7

plaintiff has established that defendant has been unjustly enriched by its failure to pay plaintiff for work completed under the subcontract.

**Constructive Trust (Count III)**

Plaintiff's third count states that this court should establish a constructive trust on monies defendant received from USAID in order to pay plaintiff for the work it completed. (Compl. ¶¶ 28–30). Pursuant to D.C. law, a constructive trust can be imposed "wherever one unfairly holds title or a property interest and where the holder would be unjustly enriched if permitted to retain such interest." *Gray v. Gray*, 412 A.2d 1208, 1210 (D.C. 1980) (quoting *Osin v. Johnson*, 243 F.2d 653, 656 (D.C. Cir. 1957)).

Plaintiff has shown that defendant has been unjustly enriched by its failure to pay plaintiff for the work it completed under the terms of the subcontract. (Compl. ¶ 30). Specifically, defendant's retention of these monies has enabled it to use the monies for its own use or divert the funds elsewhere. (*Id.*). Accordingly, the undersigned recommends that plaintiff has established facts sufficient to demonstrate that the imposition of a constructive trust is appropriate over funds received by defendant from USAID for plaintiff's work.

**Conversion (Count IV)**

The final count of plaintiff's complaint states a claim for conversion as to defendant's use of the funds paid by USAID for its own benefit rather than for payment to plaintiff. (Compl. ¶¶ 32–34). Conversion is the "unlawful exercise of ownership, dominion, and control over the personalty of another in denial of repudiation of his right to such property." *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011) (quoting *Dennis v. Edwards*, 831 A.2d 1006, 1013 (D.C. 2003)). Plaintiff's completion of its obligations under the subcontract agreement entitled it to receive payment. (Compl. ¶¶ 8–9). Pursuant to the invoices plaintiff submitted, defendant

8

invoiced USAID for plaintiff's work which, when it received the funds, was required to pay to plaintiff. (Compl. ¶ 14). Defendant has failed to use the funds received from USAID to pay plaintiff, instead retaining possession of those funds for its own benefit and use. (Compl. ¶¶ 33–34). Accordingly, the undersigned magistrate judge recommends a finding that plaintiff has established a claim for conversion against defendant.

## **Relief**

Plaintiff's complaint seeks (1) money damages in the amount of $253,677.91; (2) the imposition of a constructive trust on all amounts received by defendant from USAID for plaintiff's benefit that defendant wrongfully retains or misappropriates; (3) pre- and post-judgment interest; (4) attorneys' fees and costs; (5) temporary, preliminary, and permanent injunctive relief preserving all funds received by defendant from USAID for plaintiff's subcontract work but which were not paid to plaintiff; and (6) expedited discovery concerning defendant's receipt of and disposition of contract funds received from USAID for plaintiff's work but which were not paid to plaintiff. (Compl. at 7). Plaintiff's motion for default judgment seeks (1) money damages in the amount of $279,660.27; (2) reasonable attorneys' fees of no less than $36,138.50 and costs of no less than $941.79; (3) a waiver of the automatic stay imposed by Federal Rule of Civil Procedure 62(a)[1]; (4) post-judgment interest pursuant to 28 U.S.C. § 1961(a); (5) the imposition of a constructive trust on all amounts received by defendant from USAID for plaintiff's benefit that defendant wrongfully retains or misappropriates; and (6) permanent injunctive relief preserving all funds received by defendant from USAID for plaintiff's subcontract work but which were not paid to plaintiff. (Docket no. 16 at 5–6).

---

[1] Plaintiff is directed to file a motion requesting a waiver of the thirty-day stay imposed by Rule 62(a) after the District Judge has reviewed this proposed facts and recommendations and made a final determination.

**Money Damages**

Pursuant to the terms of the subcontract, plaintiff was required to invoice defendant for completed work on a progress basis. (Compl. ¶ 8). Defendant, in turn, was required to invoice USAID and, upon receipt of the funds from USAID, timely and fully flow down payment to plaintiff. (Compl. ¶¶ 10, 14). Defendant breached the terms of the agreement between the parties by failing to pay plaintiff for work completed under the subcontract. (Compl. ¶15). Specifically, payment remains outstanding for invoices submitted in November 2018, January 2019, February 2019, March 2019, July 2019, August 2019, October 2019, November 2019, December 2019, and January 2020. (Docket no 8-1 at 2, ¶ 14). To date, plaintiff has not received these payments from defendant. (Docket no. 16 at 2–3). The complaint, the motion for default judgment, and the subcontract agreement therefore establish that plaintiff is entitled to judgment in the amount of $279,660.27. (Compl. ¶ at 7[2]; Docket no. 16 at 2, ¶ 12). Therefore, the undersigned magistrate judge recommends entry of an order entitling plaintiff to recover money damages in the amount of $279,660.27.

**Attorneys' Fees and Costs**

Section 26.1 of the subcontract provides that defendant will reimburse plaintiff "for all costs in connection with legal or arbitration proceedings if the ultimate resolution supports the [plaintiff]." (Docket no. 8 at 16, ¶ 26.1). As this case is a diversity action based on a contract governed by D.C. state law, the contract, including its provision on fees and costs, is to be

---

[2] Plaintiff's complaint claims money damages of $253,677.91. (Compl. at 7). The motion for default judgment reflects a higher amount of money damages—$278,660.27—to incorporate work completed after the filing of the complaint. (Docket no. 16 at 2, ¶ 12). Specifically, plaintiff includes information that it intends to submit a final invoice that needs to be protected by the court for work completed after the complaint was filed but before the end of the contract (February 1, 2020). (*Id.* at 2, ¶ 13; Docket no. 8-1 at 2, ¶ 16).

interpreted using D.C. state law. *See Western Insultation, LP v. Moore*, 362 F. App'x 375, 379 (4th Cir. 2010). Generally, D.C. law follows the "American Rule" by which a prevailing litigant is ordinarily not allowed to collect reasonable attorneys' fees from the non-prevailing litigant. *Sundown, Inc v. Canal Square Associates*, 390 A.2d 421, 430 (D.C. 1978). However, a valid contract provision can authorize an award of attorneys' fees. *Id.*

The subcontract between the parties does not contain a valid provision authorizing an award of attorney's fees. Rather, Section 26.1 of the agreement refers only to costs. As such, the American Rule is applicable here. With regard to costs, the declaration of Dustin Paul (Docket no. 16-1) details the costs incurred in this case to include the filling fee, service fees, and travel-related expenses. (*Id.* at 2). Having reviewed the declaration and accounting for the American Rule, the undersigned magistrate judge recommends entry of an order denying plaintiff's request for attorneys' fees but granting plaintiff's costs of $941.79.

**Post-Judgment Interest**

In its motion for default judgment, plaintiff seeks post-judgment interest pursuant to 28 U.S.C. § 1961(a) until the judgment is fully paid. (Docket no. 16 at 5). In a federal diversity case, federal law governs the calculation of post-judgment interest. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999) (citing *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989)). Under 28 U.S.C. § 1961, a uniform federal rate for post-judgment interest has been established "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The statutory rate applies unless the parties have contractually agreed to a different rate and expressed such an agreement in "clear, unambiguous and unequivocal language." *Braunstein v. Pickens*, 274 F.R.D. 568, 574 (D.S.C. 2011). Here, there is no indication of a clear, unambiguous, and unequivocal agreement between

11

the parties to set a different rate of post-judgment interest.  Thus, the undersigned recommends a finding that interest subsequent to the date of judgment should be paid in accordance with, and at the rate prescribed by, 28 U.S.C.§ 1961.

**Constructive Trust**

Plaintiff seeks the entry of an order imposing a constructive trust over the funds owed to plaintiff but still held by defendant.  (Docket no. 16 at 4,  ¶¶ 26–28).  As noted above, under D.C. law, a constructive trust can be imposed "wherever one unfairly holds title or a property interest and where the holder would be unjustly enriched if permitted to retain such interest." *Gray v. Gray*, 412 A.2d 1208, 1210 (D.C. 1980) (quoting *Osin v. Johnson*, 243 F.2d 653, 656 (D.C. Cir. 1957)).  It is an equitable remedy. *Id.* at 1211.

A constructive trust is appropriate here.  Defendant would be unjustly enriched if it were allowed to continue to hold the funds owed to plaintiff or be able to spend those funds for its own benefit.  (Docket no. 16 at 4, ¶ 28).  Such retention would be contrary to the principles of equity.  Therefore, the undersigned recommends the court enter an order imposing a constructive trust over the funds owed to plaintiff but held by defendant.

**Permanent Injunctive Relief**

For the same reasons as this court granted plaintiff's motion for a temporary restraining order ("TRO") (Docket no. 14), plaintiff seeks the entry of a permanent injunction requiring any funds that defendant currently holds under the TRO, or any other identifiable funds received for work performed by plaintiff, be paid to plaintiff or that defendant retain, freeze, and escrow all such funds.  (Docket no. 16 at 5, ¶ 32).  A plaintiff seeking a permanent injunction must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between

the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would be not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Like a TRO, a permanent injunction is an "extraordinary [equitable] remedy." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

This court granted plaintiff's motion for a TRO, first finding that it was likely to succeed on the merits of at least one of its claims in the complaint; namely, the breach of contract count. (Docket no. 14 at 3–4). Second, the court found plaintiff was likely to suffer irreparable harm, proceeding through a two-step analysis to find plaintiff established a "sufficient nexus" between the equitable relief sought and the assets, and that the relief requested was a "reasonable measure to preserve the status quo" looking toward the ultimate equitable relief claimed. (*Id.* at 6–8). Third, this court found that the balance of equities tipped in plaintiff's favor, and fourth, that a TRO was in the public interest, especially given the contractual basis of this action and its purpose of serving the United States' foreign interests. (*Id.* at 8). There is significant overlap of the elements a plaintiff must show for a TRO and for a permanent injunction. For the same reasons that this court granted plaintiff's motion for a TRO, the undersigned magistrate judge recommends the entry of an order granting a permanent injunction.

## Conclusion

For these reasons, the undersigned recommends that default judgment be entered in favor of plaintiff Pro-Telligent, LLC and against defendant Amex International, Inc. in the total amount of $280,602.06 ($279,660.27 in money damages + costs of $941.79) with interest to accrue at the rate prescribed by 28 U.S.C. § 1961 from the date of any judgment until paid. The undersigned also recommends the entry of an order imposing a constructive trust over the funds

13

owed to plaintiff but held by defendant. Further, the undersigned recommends the entry of a

permanent injunction consistent with the terms of the TRO.

### Notice

By means of the court's electronic filing system and by mailing a copy of this proposed

findings of fact and recommendations to Amex International, Inc., 1615 L. Street NW, Suite 340,

Washington, D.C. 20036 and Amex International, Inc. c/o Registered Agent, Ct Corporation

System, 1015 15th St. NW, Washington, D.C. 20005, the parties are notified that objections to

this proposed findings of fact and recommendations must be filed within fourteen (14) days of

service of this proposed findings of fact and recommendations and a failure to file timely

objections waives appellate review of the substance of the proposed findings of fact and

recommendations and waives appellate review of any judgment or decision based on this

proposed findings of fact and recommendations.

ENTERED this 28th day of February, 2020.

/s/
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia